UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America,

    *Plaintiff,*

v.

Rahmeir Reeves,

    *Defendant.*

No. 21 CR 50027

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Before the Court is the United States' motion to reconsider the order granting Defendant Rahmeir Reeves' motion to suppress. [Dkts. 88, 94.] For the reasons below, the motion to reconsider [Dkt. 94] is denied.

## I.    Background

The factual background of this case is described more fully in the Court's previous order ruling on Reeves' motion to suppress, *United States v. Reeves*, 2025 WL 71834 (N.D. Ill. Jan. 10, 2025). Below, the Court summarizes the facts, arguments, and analysis from that order that are most relevant to the instant motion.

Reeves is charged with production of child pornography, possession of child pornography, and traveling for the purpose of sex with a minor. The charges arise from an encounter with Freeport Police in Freeport, Illinois on October 12, 2019. Around 1:16 am, Officer Matthew Anderson drove west down Fairway Drive, a short dead-end street surrounded by fields to the west, north, and south, and a medical campus to the northeast. A driveway apron towards the end of the north side of Fairway Drive lets out into a field. As Officer Anderson drove down the street, he observed a car legally parked in the driveway facing the field. Officer Anderson parked about 15 feet behind the car (roughly a car-length) and at an angle. He illuminated the car with his spotlight, reported the car to dispatch, and approached it, shining his flashlight into the back window on the driver side, which was foggy. *Id.* at *1.

As Officer Anderson approached, the back driver side door opened.[1] He observed Reeves (later discovered to be 25 years old) and a girl, "L.S." (later

---

[1]     The Government maintains that L.S. opened the car door, not Officer Anderson. It isn't clear from the unredacted BWC footage submitted [Dkt. 77-4 at 00:00:50–00:00:54], although Officer Anderson's police report states that an occupant opened the door. [Dkt. 77-2 at 8.] The Court found this factual dispute immaterial in its order and it remains immaterial.

1

discovered to be 16 years old), both half naked in the backseat of the car. Officer Anderson directed them to get dressed, asked for their identification, and inquired about the owner of the car. *Id.*

During the encounter on Fairway Drive, which lasted about 32 minutes and during which Officer Anderson questioned Reeves and L.S. separately, he learned that Reeves had arrived that night from New Jersey to meet L.S. in person for the first time, that Reeves had a suspended license, and that Reeves was aware L.S. was a minor when he traveled to Illinois to meet her. *Id.* at *1–2.

Two other officers were dispatched to the scene during the encounter. The officers took Reeves and L.S. to the Freeport Police Department ("FPD") for further investigation. At FPD, Reeves and L.S. were separated. Reeves was read his *Miranda* rights, answered questions, and consented to a search of his phone. L.S. also provided officers with the passcode to her phone. FPD later obtained warrants for the phones and Reeves and L.S.'s social media accounts, where they found a trove of evidence incriminating Reeves. *Id.* at *2–3.

Reeves' motion to suppress argued that he was unlawfully seized on Fairway Drive without reasonable suspicion and that statements and evidence obtained from his seizure should be suppressed under the exclusionary rule. The parties agreed that Officer Anderson lacked reasonable suspicion to detain Reeves at least prior to Reeves' car door opening at 1:16 am but disputed whether he'd been seized before the door opened. Reeves argued that Officer Anderson made a show of authority by positioning his car behind Reeves' and shining his spotlight and flashlight on the car on a dead-end street at night, all of which indicated that Reeves was not free to leave. Reeves submitted to that authority by remaining in his car, constituting a seizure. The Government argued that Officer Anderson initiated a consensual encounter and that his approach was "akin to community caretaking." [Dkt. 81 at 15.] Neither party requested an evidentiary hearing. *Reeves*, 2025 WL 71834, at *3–5; [Dkt. 82.]

The Court granted Reeves' motion to suppress. After reviewing the evidence, the Court first found that Officer Anderson had unlawfully seized Reeves before Reeves' car door initially opened. It assessed the totality of the circumstances to determine if Officer Anderson made a show of authority that Reeves submitted to. Most relevant to the motion to reconsider, the Court found that Officer Anderson's car was parked 15 feet behind Reeves and at an angle such that Reeves, who was blocked by two curbs and a field on his other three sides, would have to maneuver around Officer Anderson's car to leave. The Court noted that this scenario fit into a line of cases holding that use of a police vehicle to block a suspect's path or restrict their movement contributes to a show of authority. The Court found that other factors supported this conclusion, including that Officer Anderson was in a marked car, shined his spotlight and flashlight on Reeves' car, and that the encounter occurred at night on a dead-end street, which would further indicate to a reasonable person that he is the focus of police attention and not free to leave. The Court determined that

Reeves submitted to this show of authority by remaining in his car. He was therefore seized before Officer Anderson had reasonable suspicion. *Id.* at *3–7.

In concluding that Reeves was seized unlawfully, the Court also rejected the United States' argument that Officer Anderson's actions fell within the "community caretaking" exception to the Fourth Amendment. The Court recounted the narrow scenarios in which this exception has been found to apply, including when an individual's car has been impounded, was an obstruction, visibly damaged, or otherwise a threat, or when persons inside a car are asleep, incapacitated, or in need of help. It observed that this case reflected none of these scenarios and that "community caretaking" was therefore inapplicable. *Id.* at *6.

The Court then considered whether evidence obtained from Reeves' unlawful seizure should be suppressed. It held that the immediate fruits of the seizure, including police observations and BWC footage obtained at Fairway Drive, and testimony and evidence related to them, should be suppressed in the absence of any Government argument to the contrary. The Court also held that under the fruit of the poisonous tree doctrine, evidence obtained later at FPD should be suppressed because it derived from the unlawful seizure and the Government failed to show that any exception—attenuation, intervening circumstance, or independent discovery—purged it of taint from the illegal seizure. This included Reeves' statements, Reeves and L.S.'s phones and evidence recovered from them, and L.S.'s statements and testimony.[2] *Id.* at *7–10.

The Government now asks the Court to reconsider its decision on two issues. First, it argues that the Court made a manifest error of fact in concluding that Officer Anderson's car blocked Reeves' car and, therefore, Reeves was not seized before the car door opened. If the Court agrees, it will need to determine when the seizure occurred and whether it was supported by reasonable suspicion. Second, the Government argues that the Court made a manifest error of law with respect to "community caretaking" and incorrectly concluded that it doesn't apply here.

## II.    Legal Standard

In the criminal context, courts apply the same standard to a motion to reconsider as they do in civil cases. *United States v. Rollins,* 607 F.3d 500, 502 (7th Cir. 2010) ("[M]otions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits." (citing *United States v. Healy*, 376 U.S. 75 (1964))). The standard is well-established and exacting: a court should only grant a motion to reconsider where the court's misapprehension has produced a manifest error of fact or law, or where a controlling or significant change in fact or law has materialized since the court issued its initial ruling. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Oto v. Metro. Life Ins. Co.*, 224

---

[2]    The Court didn't reach Reeves' alternative argument that his incriminating statements should also be suppressed under the Fifth Amendment. *Reeves*, 2025 WL 71834, at *10 n.11.

F.3d 601, 606 (7th Cir. 2000). Such circumstances are rare, and the moving party bears a heavy burden to prove one exists. *Bedford v. DeWitt*, 695 F. Supp. 3d 998, 1001 (N.D. Ill. 2023).

"[R]eopening settled matters grates against the law's reverence for finality and repose." *F.D.I.C. v. Fid. & Deposit Co. of Maryland*, 2013 WL 5938149, at *2 (S.D. Ind. Nov. 6, 2013). Motions to reconsider are only granted in compelling circumstances to prevent litigants from treating a court's decisions as "first drafts, subject to revision and reconsideration at a litigant's pleasure." *Ellenby Techs., Inc. v. Fireking Sec. Grp.*, 533 F. Supp. 3d 656, 660 (N.D. Ill. 2021) (quoting *LaBouve v. Boeing Co.*, 387 F. Supp. 2d 845, 855 (N.D. Ill. 2005)). To that end, parties cannot use a motion to reconsider to "revisit strategic decisions that prove to be improvident, to reargue the evidence, to make new arguments, or to introduce new evidence that could have been presented earlier." *HCP of Illinois, Inc. v. Farbman Grp. I, Inc.*, 991 F. Supp. 2d 999, 1000 (N.D. Ill. 2013).

## III.     Analysis

### A.     Seizure

The Government first asks the Court to reconsider its determination that Officer Anderson's car blocked Reeves' car and, consequently, that Officer Anderson seized Reeves at 1:16 am. As a preliminary matter, Reeves argues that the Government waived the argument that Officer Anderson's car didn't block Reeves' car. A motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Accordingly, arguments raised for the first time during reconsideration that could have been raised earlier are deemed waived. *See, e.g.*, *Gates v. Syrian Arab Republic*, 755 F.3d 568, 578 (7th Cir. 2014) (waiver of legal theory regarding perfection of a lien), *overruled by Rubin v. Islamic Republic of Iran*, 830 F.3d 470 (7th Cir. 2016); *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) (waiver of argument that proof of claim should be denied fully rather than reduced).

Here, Reeves argues that the Government waived any argument about whether Reeves' car was blocked because, as the Court noted in its order, "the Government [didn't] dispute that the position of Officer Anderson's car prevented Reeves from leaving, even though Reeves preemptively raised this argument in his opening brief." [Dkt. 95 at 4 (quoting *Reeves*, 2025 WL 71834, at *4).] And Reeves treated the issue thoroughly. He argued, using still shots from Officer Anderson and Shenberger's BWC footage included in his brief, that Reeves' car was blocked by Officer Anderson's car at the back and by the curb and road to his front and sides. [Dkt. 77 at 8–9.] He also cited cases for the proposition that an officer who uses their vehicle to block a suspect or force them to maneuver to leave makes a show of authority. [*Id.* at 12–13 (citing *United States v. Johnson*, 874 F.3d 571, 574 (7th Cir. 2017); *United States v. Green*, 111 F.3d 515, 520 n.1 (7th Cir. 1997); *United States v.*

4

*Packer*, 15 F.3d 654, 657 (7th Cir. 1994); *United States v. Lechuga*, 925 F.2d 1035, 1037–39 (7th Cir. 1991); *United States v. Pavelski*, 789 F.2d 485, 488–89 (7th Cir. 1986)).] He argued that the positioning of the cars, combined with Officer Anderson's focused lights and the location and timing of the interaction would convey to a reasonable person that they were not free to leave. [*Id.* at 12–15.]

The Government counters that the relative positions of the cars was inherent in its argument that the Fairway Drive encounter was consensual:

> The government described the difference between a consensual encounter and a seizure, and argued that the defendant was not seized by the officer 'when he approached defendant's vehicle on a public street and parked approximately fifteen to twenty feet away.' Inherent in this argument is that, in a consensual encounter, a person is free to leave. Positioning a squad car to 'block' an exit is not indicative of a consensual encounter, and is instead evidence of a seizure.

[Dkt. 97 at 2 (cleaned up) (quoting Dkt. 81 at 10).]

The Court is not convinced that the government's consensual encounter argument necessarily included the position that Officer Anderson's vehicle didn't restrict Reeves' movement. Seizure is a totality of the circumstances test—no one factor is either necessary or sufficient. There are scenarios in which an officer doesn't restrict or limit a defendant's movement but still makes a show of authority. *See, e.g.*, *United States v. Johnson*, 874 F.3d 571, 572, 574 (7th Cir. 2017) (show of authority where officers pulled up parallel to and behind car implying that occupants were not free to drive away); *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) (show of authority where officer activated sirens); *United States v. King*, 439 F. Supp. 3d 1051, 1054 (N.D. Ill. 2020) (show of authority where officers pointed weapons at defendant and instructed him to put his hands up). Likewise, there are scenarios in which an officer's vehicle blocks the defendant but doesn't contribute to a show of authority, as when the officer cannot avoid obstructing them. *See, e.g.*, *United States v. Cade*, 93 F.4th 1056 (7th Cir. 2024); *United States v. Johnson*, 856 F. App'x 48 (7th Cir. 2021)).

The Government also argues that it implied Officer Anderson didn't block Reeves by emphasizing the distance between their cars. [*See* Dkt. 81 at 15–16 (collecting cases in which officer parking 15–20 feet away from individual was not a seizure).] But the Court already addressed this argument in its order. The parties agreed that the cars were about 15 feet apart. Reeves relied on this fact to support his argument that the officer's car was positioned such that Reeves would have to maneuver around it to leave, and this fact indicated a show of authority. In response, the Government took the position that the 15-foot gap between the cars indicated that there was no show of authority—it never contested that the angling of Officer Anderson's car behind Reeves was a factor. As the Court explained in its order, distance between an officer's vehicle and a suspect's factors into whether there has

been a show of authority, but positioning is also important. An officer may be 15 feet away from a suspect and nevertheless make a show of authority if the officer's vehicle restricts the individual's freedom of movement. They need not totally box in a suspect so long as their positioning sufficiently communicates a person isn't free to leave. *United States v. Smith*, 794 F.3d 681, 686 (7th Cir. 2015) ("And our case law makes clear that officers need not totally restrict a citizen's freedom of movement in order to convey the message that walking away is not an option.") The Court rejected the Government's contrary legal position and determined based on the evidence that Officer Anderson's car was sufficiently close and positioned in such a way that Reeves would have had to maneuver around Anderson's car to leave the driveway. The Government cannot now reargue existing evidence to fit a legal standard that was already well-established. *See F.D.I.C.*, 2013 WL 5938149, at *2 ("The motion to reconsider is not an opportunity for a party whose position has been rejected to try a different approach.")

Even if the Government hadn't waived this argument, the Court finds no manifest error of fact. A manifest error occurs when a district court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee*, 906 F.2d at 1191 (internal quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992) (motions for reconsideration "ordinarily only granted to correct *clear errors* of law or fact" or present new evidence) (emphasis added).

In determining whether Officer Anderson's car obstructed Reeves' car, the Court reviewed all the evidence, the most informative of which was BWC footage from officers at the scene (Officers Anderson and Fidecki and Sergeant Shenberger) and aerial images of Fairway Drive. [Dkts. 77-3, 77-4, 77-5, 77-6.] It determined that "Although there [was] about a car-length gap between the cars, [Officer Anderson's] squad car [was] close enough that Reeves, boxed in by the curbs on the right and left and a field in front, would have to maneuver around Officer Anderson's car to back out of the driveway apron and leave." *Reeves*, 2025 WL 71834, at * 4.

The Government argues that Officer Anderson's car didn't at all obstruct Reeves' car because Reeves had space to do a three-point turn, which he would do to exit the area regardless of the officer's car. To support this position, the Government presents diagrams and still shots from the officers' BWC footage. But they do not change the Court's analysis. First, the Government assembled four diagrams, each of a Fairway Drive aerial image with superimposed rectangles representing Officer Anderson and Reeves' cars to indicate their positioning and distance from each other, and arrows to indicate how Reeves' car could exit the driveway. [Dkt. 94 at 5–7.] But the Court doesn't consider these diagrams to be reliable representations of the encounter because the Government didn't explain how it created, sized, or placed the pictographic shapes representing the cars and they don't appear accurate. This includes, for instance, the sizing and placement of the rectangles representing the

cars. The rectangle for Reeves' car, is—inexplicably—substantially smaller than for Anderson's car. [*See* Dkt. 94 at 11.] The placement of Officer Anderson's car in the diagrams is also dubious. In the aerial image, there is a fire hydrant on Fairway Drive just before the road curves into the driveway apron where Reeves parked. In the Government's diagram, Officer Anderson's car is placed quite close to that fire hydrant. [*Id.* at 7–8.] But BWC footage shows that the fire hydrant was well behind Officer Anderson's car, which would place Officer Anderson's car *closer* to Reeves' car than the diagram suggests, even assuming the car representations are accurately sized. [*See* Dkt. 77-5 at 1:44:13, 1:46:29.] The Court will not alter its ruling based on speculation and instead confines its review to the evidence.

The Government also references certain parts of and still shots from the BWC footage to demonstrate that Reeves could have performed a three-point turn to exit the driveway. This, it argues, shows that the driveway and Fairway Drive were both wide enough to accommodate two cars such that Officer Anderson's car didn't obstruct Reeves or the road. [Dkt. 94 at 8–12.] The Court agrees that the driveway apron and road are wide enough for two cars. It also agrees, as it found in ruling on the motion to suppress, that it wasn't physically impossible for Reeves leave. But the evidence, including the parts highlighted by the Government, doesn't clearly show that Reeves could have exited the same way regardless of Officer Anderson's car. To the contrary, the cars appear close enough that Reeves would have had to do a more severe three-point turn to avoid Officer Anderson's car. [*See, e.g.*, Dkt. 77-5 at 1:40:55, 1:42:38, 146:04.] Consequently, the Court did not make a manifest error of fact in determining that Reeves would have to maneuver to exit the driveway and Fairway Drive because of Officer Anderson's car.

Regardless, an officer's car doesn't need to render movement impossible for a suspect to be a show of authority so long as the vehicle's positioning communicates the suspect isn't free to go. *Reeves*, 2025 WL 71834, at \*4 (citing *Smith*, 794 F.3d at 686). This point is illustrated by *Johnson*, which the Court also cited in its order. There, police observed a car parked within 15 feet of a crosswalk, which was a traffic offense under the circumstances of the case. "One police car drew up parallel to the stopped car, while another drew up behind. Shining lights through the car's windows (it was after 7 P.M. in January), police saw a passenger in the back . . . ." 874 F.3d at 572. This was enough to constitute a show of authority even though the defendant was not blocked in front. The Government argues that *Johnson* is inapposite because it "involved stopping a car for a traffic offense, whereas here the officer did not make a traffic stop, but rather approached a parked vehicle as part of his community caretaking function." [Dkt. 97 at 4.] Apart from the fact that community caretaking doesn't apply here [*see Reeves*, 2025 WL 71834, at \*6; *infra* Part III.B], that *Johnson* involved a traffic stop doesn't make it any less applicable. The Seventh Circuit explicitly recognized that "the police did more than just stroll up: two squad cars, which bathed the parked car in bright light, implied that the occupants were not free to drive away. The district judge treated this as a seizure; so do we." *Johnson*, 874 F.3d at 574.

As in *Johnson*, the Court also didn't confine its analysis to one factor. Seizure is a totality of the circumstances test that ultimately asks whether a reasonable person would feel free to leave. *Smith*, 794 F.3d at 684, 686. Officer Anderson's positioning, which Reeves couldn't ignore if he tried to leave, contributed to a show of authority. So did the fact that the officer shined his spotlight and flashlight on Reeves' car, as the officers did in *Johnson*. The Court also considered the fact that the encounter occurred "at night, on a dead-end street, with no one else around," *Reeves*, 2025 WL 71834, at *5, which are circumstances akin to those that the Seventh Circuit has recognized cut in favor of a show of authority. *See Smith*, 794 F.3d at 685 (distinguishing dark, narrow, unpopulated alleys from other public areas that cut against seizure). Because a person's movement is naturally more restricted in an alley or on a dead-end street, a reasonable person in such a location with an officer positioned behind him would not have felt at liberty to ignore police presence and go about his business. *Id*. The Court gathered up all of these facts and determined that Reeves demonstrated that he had been seized before his car door initially opened.[3] *See United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) (defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality); *United States v. Steele*, 782 F. Supp. 1301, 1306 (S.D. Ind. 1992) (defendant bears burden of proving by a preponderance of the evidence that he was seized), *aff'd*, 989 F.2d 502 (7th Cir. 1993). The Government didn't contest any factor except the positioning of Officer Anderson's car. Given that the Court made no manifest error of fact on that piece of evidence, the rest of its analysis also stands.

## B.     Community Caretaking Exception

Next, the Government challenges the Court's application of the community caretaking exception. Although the Government states in reply that "the sole issue" is whether the Court made a manifest error of fact "in finding that the officer 'blocked' [Reeves'] car at 1:16 a.m.," [*see* Dkt. 97 at 1], it also takes issue with the Court's community caretaking analysis. [Dkt. 94 at 13; Dkt. 97 at 5.] From the Court's perspective, the Government appears to conflate community caretaking with a consensual encounter. A consensual encounter occurs in the *absence* of a Fourth Amendment seizure while community caretaking is an *exception* to it when the circumstances would otherwise implicate the Fourth Amendment. The Government argues that community caretaking doesn't require a seizure, and that an officer "who [finds] an unusual situation with a parked car in a desolate [public] area" and approaches it to investigate doesn't effectuate a Fourth Amendment seizure. [Dkt. 97 at 5.] This reflects the well-worn proposition that an officer who merely approaches someone to ask a few questions initiates a consensual encounter. *United States v. Cade*, 93 F.4th 1056, 1060 (7th Cir. 2024) (citing *Florida v. Bostick*, 501 U.S. 429 (1991)). If indeed the Government is making a consensual encounter argument, it's

---

[3]     The Court did not, as the Government suggests, consider the positioning of Officer Anderson's car to be the "most important" factor, [Dkt. 94 at 12], but rather meant that this factor most distinguished Reeves' situation from that in *United States v. Pace*, 48 F.4th 741 (7th Cir. 2022). No one factor is most important in a totality of the circumstances test—all must be considered together.

moot because the Court found that Reeves was seized at 1:16 am. If the government's position is that community caretaking should apply even if Reeves was seized at 1:16 am, the Court does not agree.

In opposition to the motion to suppress, the Government invoked the community caretaking exception. [Dkt. 81 at 15 ("Officer [Anderson's] decision to approach [Reeves'] parked car was akin to community caretaking").] The Court explained that "community caretaking" is a "narrow doctrine [that] holds that some police functions that are 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute' don't fall under the Fourth Amendment." *Reeves*, 2025 WL 71834, at \*6 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The Court surveyed community caretaking caselaw and observed that:

> The community caretaking exception was originally created to allow police to impound and search a disabled or damaged vehicle to protect the public and any property in an impounded vehicle while it was temporarily seized. Today, it also allows police to check on sleeping or incapacitated people in vehicles in public places.

*Id.* (citations omitted). Applying the law to the facts, the Court found that community caretaking didn't apply because none of the hallmark signs warranting police intervention in a public safety capacity appeared in Reeves' case. *Id.* ("Reeves' car hadn't been impounded, was not an obstruction, visibly damaged, or otherwise a threat, nor did the circumstances involve anyone sleeping behind the wheel, incapacitated or in need of help."). Consequently, Officer Anderson's actions were subject to the Fourth Amendment.

In its motion, the Government argues that the relevant question with respect to community caretaking "is not whether any of the accepted community caretaking functions existed in retrospect, but whether any of the accepted scenarios could have existed to cause the officer to approach the car in the first place." [Dkt. 97 at 5.] The Government argues that the Court improperly "collapse[d] the timeline," for "[a]t the time the Court found that a seizure occurred, the first officer did not yet have the time to ascertain whether [Reeves'] car had front-end damage or was otherwise a threat." [Dkt. 94 at 13.]

Reeves argues that the Government waived this argument because its original community caretaking argument was undeveloped, as the Court recognized in its order. [Dkt. 95 at 7 ("[T]he Government fails to explain how [Officer Anderson's] actions qualify as community caretaking or cite a single case in support, even though Reeves anticipated this argument." (quoting *Reeves*, 2025 WL 71834, at \*6)).] Reeves also contends that the issue still hasn't been sufficiently raised to merit consideration because the Government fails to "cite a single case," "explain how the officer's actions qualify as community caretaking," or "discuss or cite any of the cases the Court cited." [Dkt. 95 at 7–8 (citing *United States v. Carpenter*, 2023 WL 358794, at \*7 (N.D. Ill.

Jan. 23, 2023) (government waived argument where it 'cite[d] only one case' and 'support[ed] its . . . argument with conclusory allegations.')).]

The Government's community caretaking argument is not waived. The Government mentioned community caretaking in its opposition to the motion to suppress, and the Court commented on the thinness of that initial argument because it appeared to be a stray line in an argument otherwise about consensual encounter. *See United States v. Diggs*, 2020 WL 208826, at *1 (N.D. Ill. Jan. 14, 2020) ("Granted, the Government inserted a three-sentence paragraph regarding apparent authority in the middle of its analysis of the third-party doctrine. But that stray paragraph was insufficient to preserve the apparent authority argument." (cleaned up) (citing *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017)). But the Government clarified and expanded on its position in its motion for reconsideration and the Court now understands that the Government conceives of community caretaking as more related to a consensual encounter than the Court first supposed. [*See* Dkt. 97 at 5 (arguing that community caretaking does not require seizure and is invoked when an officer approaches a car parked in an unusual area).] Thus, the Court will consider the substance of its argument.

On the merits, the Government has not shown that the Court made a manifest error with respect to community caretaking. The Government argues that in determining whether an officer was acting as a community caretaker, the Court should ask whether any scenario calling for community caretaking *could have* existed rather than asking whether what the officer knew at the time of seizure indicated such a scenario *did* exist. [Dkt. 97 at 5.] The Government doesn't cite any case in support of this position.[4] Nor is it reflected in the community caretaking caselaw. To the contrary, the cases the Court has identified on this topic have similar key facts: an officer observed (or was informed of) clear signs of an imminent potential public safety issue *before* taking action that would otherwise implicate the Fourth Amendment. *See Long v. United States*, 847 F.3d 916, 918, 920–21 (7th Cir. 2017) (officer observed cars in drive-through lane maneuvering around Long's stopped car and after observing Long asleep behind the wheel, told him to park and open the door); *United States v. Dickson*, 849 F.3d 686, 688, 690 (7th Cir. 2017) (per curiam) (officer responded to report that two people were asleep in a car parked in a drive-through lane, opened their car door, and shook defendant when he wouldn't wake up); *Woods v. Vill. of Bellwood*, 502 F. Supp. 3d 1297, 1304, 1307–08 (N.D. Ill. 2020) (officer received complaint that someone was sleeping in a truck in a parking lot for over an hour, approached, pounded on the window, and demanded defendant open the door when he appeared nonresponsive).[5]

---

[4]    The only case the Government cited in discussing community caretaking is *United States v. Lickers*, 928 F.3d 609 (7th Cir. 2019), which the Court already explained is not a community caretaking case, *Reeves*, 2025 WL 71834, at *6 n.5, a conclusion that the Government didn't address.

[5]    The other community caretaking cases the Court addressed involved searching cars already in police custody or a home. *Cady*, 413 U.S. at 441; *South Dakota v. Opperman*, 428

There is also good reason to require that an officer be aware of some tangible sign of public disturbance before excusing a subsequent search or seizure from Fourth Amendment scrutiny: it ensures that officers only benefit from the community caretaking exception when they were truly acting for public safety rather than engaging in an investigative fishing expedition. *See Long*, 847 F.3d at 921 ("The Constitution allows officers to perform these kinds of caretaking functions because, in doing so, they are taking actions not for any criminal law enforcement purpose but rather to protect members of the public." (cleaned up)). Otherwise, an officer could search or seize, claiming post hoc that there *could have* been a safety issue without reason to believe there was one. This would turn the community caretaking exception into an end run on Fourth Amendment's protections against unreasonable search and seizure. Officers can investigate unusual behavior, but without a warrant, reasonable suspicion, or sign of a public safety concern to guard against unfettered discretion, they can only do so through consensual interactions.

The Court also stands by its conclusion that observing a car parked legally and unobtrusively, albeit in an unusual area, does not automatically trigger community caretaking. It has not found a case supporting such a scenario and to conclude that it does would expand the doctrine beyond its narrow purpose. An officer with a hunch or mere curiosity can approach and ask questions but cannot effect a seizure simply because something might be amiss.[6] Consequently, the community caretaking exception does not apply.

## IV.    Conclusion

For the foregoing reasons, the motion to reconsider [Dkt. 94] is denied.

Enter: 21-cr-50027
Date:  April 4, 2025

_____
Lindsay C. Jenkins
United States District Judge

---

U.S. 364 (1976); *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 554 (7th Cir. 2014) (holding that community caretaking doesn't apply to the warrantless entry of a home).

[6]    Although the Court didn't rest its conclusion on this observation, Officer Anderson's reaction after Reeves' door initially opened tellingly confirmed that he was investigating rather than assessing whether the car's occupants needed help. *See Reeves*, 2025 WL 71834, at *6.